UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


CASSANDRA L. LEE,

        Plaintiff,

    v.                            ACTION NO. 2:13cv109

VIRGINIA BEACH SHERIFF'S OFFICE, ET AL.,

        Defendants.


### OPINION AND FINAL ORDER

This matter comes before the court on the Motion for Summary Judgment and accompanying Memorandum in Support, filed by the Defendants[1] on September 26, 2013. The Plaintiff filed her Opposition to the Defendants' Motion for Summary Judgment on October 17, 2013,[2] and the Defendants filed their Reply on

---

[1] There are seven named Defendants in the Plaintiff's Amended Complaint. Throughout this Order, "the Defendants" refer to the movant parties, the Virginia Beach Sheriff's Office, Ken Stolle, Mark F. Schuster, Elliot Ortiz and Helen Quick. Despite multiple attempts by the United States Marshals to locate Defendants Dennis Free and Paul Lanteigne, these Defendants have not been served with this action. See ECF Nos. 22, 27; infra notes 33 and 34.

[2] On October 17, 2013, the Plaintiff filed a Memorandum in Support of "Plaintiff Lee's Motion for Summary Judgment." However, the Plaintiff had not filed a Motion for Summary Judgment. On November 12, 2013, the Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment, in which she asked the court to omit the previous filing's title, and to reassign the title as "Memorandum in Opposition to Defendant's Summary Judgment." Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 1. See ECF Nos. 20, 28.

October 25, 2013. The matter is now ripe for review. For the foreground reasons, the motion is **GRANTED**.

## I. Factual and Procedural History

### A. Factual History[3]

From March 1990 through December 2009, the Plaintiff, an African American female, worked for the Virginia Beach Sheriff's Office ("VBSO"), ultimately achieving the rank of Captain, and becoming the first minority female to command Correctional Operations in the VBSO.[4] She had achieved several top recognitions prior to being appointed as Commanding Officer of the Inmate Services and Records Division ("ISR"). Pl.'s Am. Compl. ¶ 18. During her tenure as the Commanding Officer of the ISR, which began on May 1, 2008, and ended on June 1, 2009, the Plaintiff complained of difficulty working under Chief Deputy Schuster and Chief Deputy Free because "they were creating a hostile work environment of discrimination and retaliation against [her]."[5] Id. ¶ 23. The Plaintiff met with Sheriff

---

[3] The facts presented are undisputed except as noted.

[4] As a Captain in the VBSO, the Plaintiff reported to and was supervised by a Chief Deputy. See Defs.' Mem. of Law in Supp. of Summ. J. at 3.

[5] During the time of these allegations of discrimination and retaliation, the Defendants served in the following roles at the VBSO: Paul Lanteigne was the Sheriff; Ken Stolle was the Sheriff-Elect; Marc Schuster was the Chief Deputy of Correctional Operations and the direct supervisor of the Plaintiff while she commanded ISR; Dennis Free was the Chief

Lanteigne and Chief Deputy Schuster in February 2009 to address her strained working relationship with Chief Deputy Schuster. Defs.' Reply to Mem. in Opp'n to Mot. for Summ. J. at 3. To ensure effective communication between the Plaintiff and Chief Deputy Schuster, Sheriff Lantiegne held a meeting between himself, the Plaintiff, and Chief Deputy Schuster in which he asked to be copied on emails between the Plaintiff and Chief Deputy Schuster, and Chief Deputy Schuster asked the Plaintiff for ideas that would better facilitate such communication. Defs.' Reply to Mem. in Opp'n to Mot. for Summ. J. at 3; Defs.' Ex. 2, Schuster Aff. ¶ 9; Defs' Ex. 7. At this meeting, the Plaintiff did not address any concerns of discrimination or retaliation. Defs.' Ex. 2, Schuster Aff. ¶ 9.

Additionally, during her tenure in the ISR, the Plaintiff experienced work performance-related issues. Specifically, she was informally counseled for erroneous inmate releases; failing to implement ISR training procedures; failing to effectively communicate with her superiors; ignoring established VBSO directives for reporting critical incidents; acting against those established directives; failing to use a biometric

---

Deputy of the Civil Process Division and the direct supervisor of the Plaintiff while she commanded the Civil Process Division; Elliot Ortiz was a Captain; and Helen Quick was the Personnel/Human Resource Director. At no time were the Chief Deputies, Captains, or the Human Resource Director empowered to take any tangible employment action against the Plaintiff.

fingerprint system in place for the weekender tracking program; delaying the process of inmates released on bond; failing to provide requested information to her superiors; disregarding directives from her superiors; and failing to track inmates under the jurisdiction of the Immigration and Customs Enforcement Agency. Defs.' Mem. of Law in Supp. of Summ. J. at 4-7; Defs.' Ex. 2, Schuster Aff. ¶¶ 10-15; Defs.' Ex. 11.

The Professional Standards Office ("PSO") in charge of investigating erroneous inmate releases confirmed a deficiency in the ISR training and supervision, and a subsequent audit of the ISR division also revealed deficiencies in the operation of the ISR. Defs.' Mem. of Law in Supp. of Summ. J. at 5-8; Defs.' Ex. 12. The auditing team determined that the issues plaguing the ISR were attributable to the senior command officers, which included the Plaintiff and the Lieutenants working for her. Defs.' Ex. 2, Schuster Aff. ¶ 19. The Plaintiff was never formally disciplined as a result of the erroneous inmate releases, or as a result of the ISR audit.[6] She was, however, informed of the results. Id.

---

[6] The Plaintiff alleges she received a written reprimand and offers Exhibit 17 as proof of the written reprimand; however, Exhibit 17 is a memorandum from Chief Deputy Free stating that the issues within ISR were a result of "cumulative failure of leadership at the command level." Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 4. The only formal counseling sheet that the Plaintiff offers is Exhibit 15, which addresses a "failure to

Because of the PSO investigation, the audit, and the needs of the VBSO,[7] the senior leadership was reassigned. Defs.' Mem. of Law in Supp. of Summ. J. at 10. As such, the ISR was reorganized and the Civil Process Division reverted to a former administrative structure, in which a Captain was placed in charge. Id. On April 30, 2009, Sheriff Lanteigne announced this reorganization.

On May 29, 2009, the Plaintiff filed her first Equal Employment Opportunity Commission ("EEOC") charge alleging discrimination and retaliation based on race and gender. On June 1, 2009, the Plaintiff was laterally transferred to the Civil Process Division, where she was assigned as the Commanding Officer of that division. Pl.'s Am. Compl. ¶ 26; Defs.' Mem. of Law in Supp. of Summ. J. at 11. The Plaintiff did not suffer a reduction in salary, benefits, or other conditions of employment. Defs.' Mem. of Law in Supp. of Summ. J. at 11. The Plaintiff remained as the Commanding Officer of the Civil Process Division until December 16, 2009, when the Sheriff-Elect[8]

---

appear for Duty/Court," and which does not relate to the erroneous inmate releases or the ISR audit.

[7] Sheriff Lanteigne ordered audits of other VBSO divisions in order to evaluate the quality of service across the VBSO. Defs.' Ex. 2, Schuster Aff. ¶ 17.

[8] At the time, Ken Stolle, was the Sheriff-Elect for the VBSO. Under Virginia law, upon election of a new sheriff, prior

decided not to reappoint her. Defs.' Mem. of Law in Supp. of Summ. J. at 14; Defs.' Ex. 1, Stolle Aff. ¶ 15; Pl.'s Ex. 21. The Defendants assert that the decision was based on the "plaintiff's performance, lack of accountability and failure to accept responsibility, her peers' negative reviews,[9] and her hostile and unreceptive demeanor in two interviews." Id. The Plaintiff was then notified that she would not be reappointed.[10] At the time of her non-reappointment, the Plaintiff was five months short of a twenty-year career with the VBSO. On July 7, 2010, the Plaintiff filed her second EEOC charge alleging

---

appointees only continue employment if the new sheriff appoints them. Va. Code §§ 15.2-408, 15.2-1603. Appointment decisions are within the sole discretion of the new sheriff. Id. "The Sheriff-Elect has discretion to appoint or not to appoint any individual he chooses [and] because of this discretion, the deputy has no expectation of continued employment." Jolliffe v. Mitchell, 971 F. Supp. 1039, 1042 (W.D. Va. 1997).

[9] The Sheriff-Elect implemented a process to better familiarize himself with the higher-ranking officers who were subject to possible reappointment. This process included an interview, resume review, and peer review. In the peer review, each Captain was asked to rate their fellow Captains on a scale of 1-6, with one being the best and six being the worst. Each of the other five Captains ranked the Plaintiff last. See Defs.' Mem. of Law in Supp. of Summ. J. at 13; Defs.' Ex. 1, Stolle Aff. ¶ 10; Pl.'s Ex. 12.

[10] In an effort to ensure that the Plaintiff had sufficient time to address her personal affairs at the end of her appointment, the Plaintiff was allowed to use her remaining hours of annual leave and was then placed on administrative leave until December 31, 2009. See Pl.'s Ex. 21.

discrimination based on race and gender, and retaliation. Defs.'
Reply to Opp'n to Mot. for Summ. J.

At all times relevant to the Plaintiff's employment, the
VBSO had in effect an internal Equal Employment Opportunity
("EEO") Policy, whereby any employee could file a formal
complaint of discrimination and/or sexual harassment. See Defs.'
Ex. 5. The filing of a complaint pursuant to the VBSO policy did
not preclude the filing of an EEOC charge. Id. Any filed
complaint would be internally investigated by the PSO. Id. At
all times relevant to her employment with the VBSO, the
Plaintiff never filed an internal EEO complaint pursuant to the
VBSO EEO Policy to address her discrimination and retaliation
complaints.[11] As such, no internal resolution of her complaints
was achieved. See Defs.' Mem. of Law in Supp. of Summ. J. at 4;
Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 11. The Plaintiff,
however, was aware of the policy.[12]

B. Procedural History

On March 13, 2013, the Plaintiff, Cassandra L. Lee,
proceeding pro se,[13] filed an Amended Complaint against the

---

[11] See Defs.' Ex. 5, VBSO Policy and Procedure General Order # 03-
17-00, regarding EEO Discrimination Complaints.

[12] The Plaintiff offers the VBSO's EEO policy as Exhibit 37.

[13] A pro se complaint involving civil rights issues should be
liberally construed. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th
Cir. 1978). However, a court is not required "to accept as true

Defendants, alleging two counts of discrimination and two counts of retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Virginia Human Rights Act ("VHRA").[14] The Plaintiff alleges that, during her employment with the VBSO, the Defendants discriminated against her on the basis of her race and gender, and retaliated against her for filing two charges with the EEOC. Both EEOC charges were investigated and referred to the Department of Justice ("DOJ") after failed attempts at conciliation; however, the DOJ refused to file suit on both charges and, subsequently, forwarded the Plaintiff a notice of the right to sue. Pl.'s Ex. 28. The Plaintiff timely filed her Amended Complaint on March 31, 2013, and on September 26, 2013, the Defendants moved for summary judgment. On October 17, 2013, the Plaintiff filed her Opposition to the Defendants' Motion for Summary Judgment, and the Defendants filed their reply on October 25, 2013.

In her Amended Complaint, the Plaintiff names the following entities as the Defendants in their official and individual

---

a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).

[14] The Plaintiff's two counts of discrimination and retaliation only differ in whom she names as the Defendants under each count. The court will consider the substance of all allegations in the Plaintiff's Amended Complaint.

capacities:[15] the VBSO, the former and current Sheriff, other officers, and a civilian employee.

## II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure ("FRCP") 56 is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In essence, the non-movant must present "evidence on which the [trier of fact] could reasonably find" for the non-moving party. Anderson, 477 U.S. at 252.

To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings, and rely instead on affidavits, depositions, or other evidence to show a genuine issue for trial. See Celotex, 477 U.S. at 324; see also M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993) ("A motion for

---

[15] See supra note 1; infra notes 33 and 34.

summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'") (quoting Anderson, 477 U.S. at 249-50). Conclusory statements, without specific evidentiary support, do not suffice, Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998), nor does "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position." Anderson, 477 U.S. at 252. Rather, "there must be evidence on which the jury could reasonably find for the plaintiff." Id.

## A. Statutory Basis and Burden of Proof

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It also prohibits retaliation against an employee, making it unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id. § 2000e-3(a).

To avert summary judgment, a plaintiff alleging discrimination and retaliation pursuant to Title VII may proceed

10

through two avenues of proof. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (citing Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 284 (4th Cir. 2004)). The plaintiff may present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Id. Alternatively, the plaintiff may proceed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[16] Id. In this case, the Plaintiff seeks to proceed under the burden-shifting framework.[17]

---

[16] The McDonnell Douglas burden-shifting framework also applies to Title VII claims of Retaliation. See Thurston v. America Press, LLC, 497 F. Supp. 2d 778, 781 (W.D. Va. 2007).

[17] The court notes that it would have been futile for the Plaintiff to attempt to proceed under the first avenue of proof. The Plaintiff has not come forward with any direct or circumstantial evidence indicating that race or gender motivated any of the employment-related decisions at issue in this civil action. The Plaintiff cannot avoid summary judgment by asserting in conclusory fashion that the EEOC's investigation substantiates her claims of discrimination. See Pl.'s Am. Compl. ¶ 45; see also Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) (holding conclusory findings of discrimination by EEOC "not sufficiently probative to create a genuine issue of material fact"). Moreover, the Plaintiff's own assertions of discrimination and retaliation are insufficient to avoid summary judgment. See, e.g., Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1006 (4th Cir. 1987) (holding that the plaintiff failed to offer sufficient evidence to avoid summary judgment where the plaintiff argued, among other things, that "it was 'statistically documented' that [her employer] discriminates against women, but she failed to produce the statistical evidence").

Under the McDonnell Douglas burden-shifting framework, this court must first consider whether the Plaintiff has established a prima facie case of race or gender-based discrimination. McDonnell, 411 U.S. at 802. The essential elements of a prima facie case vary slightly depending upon the manner in which the Defendants allegedly discriminated against the Plaintiff. Compare Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (listing the elements of discrimination based on disparate treatment) with Diamond, 416 F.3d at 319 n.6 (listing the essential elements of a claim of racial discrimination in a failure to promote case) and Bryant v. Bell Atl. Maryland Inc., 288 F.3d 124, 133 (4th Cir. 2002) (setting forth the essential elements of a claim of racial discrimination in the enforcement of employee disciplinary measures). If the Plaintiff fails to establish any of the essential elements of a prima facie case of discrimination, the court must grant summary judgment in favor of the Defendants. See Bryant, 288 F.3d at 133-35. If, on the other hand, the Plaintiff establishes a prima facie case, the burden shifts to the Defendants to articulate a non-discriminatory reason for the difference in treatment. Id. at 133. If the Defendants articulate one or more such reasons, the burden shifts back to the Plaintiff to demonstrate that the Defendants' reasons were merely a pretext for discrimination. Id.

12

## B. Scope and Timeframe of the Plaintiff's Claims

The Plaintiff's claims are limited to the timeframe and issues raised in her EEOC charges as her EEOC charges define the scope of her Title VII claims. See Jones v. Calvert Group, Ltd., 552 F.3d 297, 300 (4th Cir. 2009) (stating that "only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit") (quoting Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)).

### III. Analysis

The Defendants advance six arguments in support of their Motion for Summary Judgment. The Defendants allege that 1) the Plaintiff cannot establish discrimination based on race or gender; 2) the Plaintiff cannot establish a hostile work environment; 3) the Plaintiff cannot establish retaliation; 4) the Eleventh Amendment bars the Plaintiff's official capacity claims that seek money damages against the Defendants; 5) Title VII does not provide the Plaintiff a remedy against the Defendants in their individual capacities; and 6) the VHRA does not provide the Plaintiff a remedy.

## A. Discrimination Claims

The Plaintiff alleges race and gender discrimination based on disparate treatment when the Defendants subjected her to an audit, reprimand, and transfer. The Plaintiff also alleges race and gender discrimination based on non-reappointment.

### 1. Discrimination based on disparate treatment

The Plaintiff claims that she was treated differently from her peers who held the ISR position before her. Pl.'s Am. Compl. ¶ 24; Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 6. In support of her claim, she alleges that "white male and Hispanic male co-workers were never subjected to an audit, reprimand, transfer, demotion or termination (non-reappointment)." Pl.'s Am. Compl. ¶¶ 24-25. Specifically, she alleges that she was "treated unfair and not the same," that the she was "treated different than her male peers," that "she was subject to performing clerk tasked [sic]," that "she was relieved of extra duties," that "she received a written reprimand for inmates released in error, which none of her peers ever experienced," that "she was transferred to another division without completing her two year tenure," and that she was "placed under heightened surveillance and was subject to numerous internal investigations not related to her." Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 6.

To establish a prima facie case of discrimination based on disparate treatment, the Plaintiff must establish 1) membership

in a protected class; 2) satisfactory job performance; 3) adverse employment action; and 4) different treatment from similarly situated employees outside the protected class. Coleman, 626 F.3d at 190 (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

In this case, it is uncontested that the Plaintiff is a member of a protected class. The Plaintiff, however, fails to establish a prima facie case of discrimination based on disparate treatment because, as discussed below, she has not shown satisfactory job performance, that she suffered an adverse employment action, or that she received different treatment than other similarly situated persons outside of her protected class.

First, the Plaintiff fails to prove satisfactory job performance while in the ISR. In the Plaintiff's view, she performed her job satisfactorily. Pl.s' Am. Compl. ¶¶ 18-19. She offers her job performance prior to her transfer to the ISR as proof. However, the Plaintiff has not offered evidence of satisfactory job performance while she commanded the ISR.

As part of the standard rotational process of leadership within the VBSO,[18] on May 1, 2008, the Plaintiff was transferred

---

[18] During his administration, Sheriff Lanteigne attempted to rotate Captains among the VBSO divisions every two years to ensure that more than one Captain had knowledge of the multiple divisions' policies and procedures. However, the timing of these rotations were affected by retirements, promotions,

to the ISR. Shortly after she was transferred, the Plaintiff's work performance declined. It is undisputed that under her tenure, there were sixty-eight internal investigations of incidents in the ISR, of which seven involved erroneous inmate releases. Defs.' Ex. 2, Schuster Aff. ¶ 21; Defs.' Mot. for Summ. J. at 23. Additionally, it is also undisputed that the Plaintiff violated established directives when she failed to report three erroneous releases to her chain of command.[19] Defs.' Ex. 2, Schuster Aff. ¶ 10; Defs.' Mot. for Summ. J. at 23; Defs.' Ex. 11. To address the erroneous releases, the Plaintiff was instructed by her supervisor, Chief Deputy Schuster, to develop and implement a command review process to ensure quality control of the inmate release process, and a training program to ensure staff performance. Defs.' Ex. 2, Schuster Aff. ¶ 7. The Plaintiff disregarded this order and, as a result, other erroneous releases occurred. Id.; see also Defs.' Ex. 8, Memorandum from Chief Deputy Schuster (stating that the "[Plaintiff] did not have a formal training process in place and has never had one since the inception of her command"). It is

---

reorganizations, grant money, service needs, injuries, illnesses and other staffing issues. See Defs.' Ex. 2, Schuster Aff. ¶ 29.

[19] The VBSO has a policy and procedure that addresses the proper manner in which personnel must handle erroneous inmate releases. See Defs.' Ex. 10.

also undisputed that the Plaintiff failed to utilize the biometric fingerprint verification system to track inmates participating in the Weekender Program, and to track inmates falling under the jurisdiction of the Immigration and Customs Enforcement Agency. Defs.' Mem. of Law in Supp. of Summ. J. at 6-7. Moreover, it is undisputed that the audit,[20] which was conducted to address the issues plaguing the ISR, revealed multiple deficiencies within the division, including deficiencies in training, management, and supervision. Defs.' Mem. of Law in Supp. of Summ. J. at 5-8; Defs.' Ex. 12. These deficiencies were attributed to the command team in charge of the ISR, which included the Plaintiff and the Lieutenants working for her.

The Plaintiff does not deny these facts, but rather, argues that the problems plaguing the ISR resulted from inadequate staffing and faults in the administration and leadership of the VBSO, all of which allegedly caused a disruption in the daily operations of the Division. Pl.'s Am. Compl. ¶ 27. Her statements blaming the VBSO administration and her exhibits[21] rebutting portions of the ISR audit are insufficient to overcome

---

[20] See Defs.' Ex. 12, the ISR Audit.

[21] The Plaintiff offers several exhibits, which are memoranda from the Lieutenants and Sergeants assigned to the ISR, and which rebut some of the findings of the ISR audit. See Pl.'s Ex. 14, 14A, 14B, 14F, 14G.

her documented and repeated performance shortcomings and violations of VBSO policies and directives.[22] As such, she fails to prove satisfactory job performance.

Next, the Plaintiff fails to prove that she suffered an adverse employment action when she was laterally transferred to the Civil Process Division. The Plaintiff asserts that this transfer constituted a "lateral demotion" and, thus, qualifies as an adverse employment action. The Plaintiff is incorrect in her assertion.

First, workplace reorganization is permitted if done for legitimate, rather than discriminatory, reasons. Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer latitude and autonomy to make business decisions, including workplace reorganization, so long as the employer does not violate the [law]."); see also McClamb v. Rubin, 932 F. Supp. 706, 715 (M.D.N.C. 1996). Next, a reassignment without some detrimental effects, such as a significant change in working conditions, does not constitute an adverse employment action. Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999). In Boone, the court held that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion,

---

[22] See Defs.' Ex. 11, Memorandum summarizing the Plaintiff's work performance.

reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id.

In the instant action, because of the PSO investigation, the audit, and the needs of the VBSO, the senior leadership was reassigned. As such, the ISR was reorganized and the Civil Process Division reverted to a former administrative structure, in which a Captain was placed in charge. Defs.' Mem. of Law in Supp. of Summ. J. at 10. On June 1, 2009, the Plaintiff was laterally transferred to the Civil Process Division and appointed as the Commanding Officer of that division. Defs.' Mem. of Law in Supp. of Summ. J. at 11. The Plaintiff retained the same title and responsibilities as a Commanding Officer of any VBSO division, and the same salary, benefits, and conditions of employment. Thus, the Plaintiff cannot allege that this lateral transfer constituted an adverse employment action. Moreover, the Plaintiff has not offered any evidence of discriminatory reasons behind the reorganization, nor has the Plaintiff offered evidence that this lateral transfer resulted in a significant change in working conditions. She only asserts that the Commanding Officer of the Civil Process Division to which she was assigned was previously held by a Lieutenant, a lower ranking officer, and that she was limited to only working

in that division where her counterparts before her were responsible for both Court Security and the Civil Process Division. Pl.'s Am. Compl. ¶ 26. Even if the Plaintiff were able to show that her transfer constituted an adverse employment action, the Defendants have proffered legitimate reasons for the reorganization that led to her lateral transfer.

The Plaintiff alleges that she was reprimanded as a result of the erroneous inmate releases and the ISR audit, and that this, too, constituted an adverse employment action. Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 6. The Plaintiff is incorrect in her assertion.

The Plaintiff was never reprimanded[23] as a result of the erroneous releases and the ISR audit; however, she was informed of the results. Defs.' Ex. 2; Schuster Aff.¶ 20. Her allegations that she was reprimanded when others who previously ran the ISR were not are unfounded. Even if she had received a written reprimand, such a written reprimand is not an adverse employment action within the scope of Title VII, unless it was "used as a basis to detrimentally alter the terms and conditions of the recipient's employment." Flateau v. South Carolina Comm'n for the Blind, 50 Fed. Appx. 653, 655 (4th Cir. 2002). Thus, the Plaintiff has not proven an adverse employment action.

---

[23] See supra note 6.

Finally, the Plaintiff cannot prove that she was treated differently than others outside of her protected class who were similarly situated. To establish disparate treatment where the Plaintiff has based her allegations completely upon a comparison to an employee from a non-protected class, the Plaintiff must point to similarly situated employees who engaged in the same conduct and were treated differently. Haywood v. Locke, 387 Fed. Appx. 355, 359 (4th Cir. 2010). This includes evidence that "the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). The Plaintiff identifies Captain Ortiz and Captain Keifer as her comparators.[24] At all times relevant to their employment as Captains with the VBSO, the Plaintiff, Captain Ortiz, and Captain Kiefer were subjected to the same standards of conduct, policies and procedures. See Defs.' Ex. 3.

First, the Plaintiff alleges that "white male and Hispanic male co-workers were never subjected to an audit . . . ." Pl.'s Am. Compl. ¶¶ 24-25. Like the Plaintiff, Captain Keifer and

---

[24] Both Captain Ortiz, a Hispanic male, and Captain Keifer, a white male, served as the Commanding Officer of ISR before the Plaintiff.

Captain Ortiz were subjected to numerous ISR investigations. In the investigations dealing with erroneous inmate releases under their tenures, those releases were attributed to the failures of particular deputies and not the command team. See Defs.' Ex. 2, Schuster Aff. ¶¶ 23-24. In the Plaintiff's case, the erroneous inmate releases were attributed to the failures of the command team, which included the Plaintiff and the Lieutenants working for her. Id. These releases, coupled with her performance shortcomings discussed above, prompted the VBSO's decision to conduct an audit. The audit was meant to improve the quality of service within the ISR. Moreover, the Plaintiff has not shown that this business decision to audit her division was racially or sexually motivated.

Next, the Plaintiff alleges that "white male and Hispanic co-workers were never subjected to [a] reprimand . . . ." Pl.'s Am. Compl. ¶¶ 24-25. As discussed above, the Plaintiff fails to show that she, herself, was reprimanded for the erroneous inmate releases and the IRS audit.[25]

The Plaintiff also alleges that "white male and Hispanic co-workers were never subjected to [a] transfer . . . ." Pl.'s Am. Compl. ¶¶ 24-25. Like the Plaintiff, Captain Ortiz and Captain Keifer were subjected to the standard rotational process

---

[25] See supra note 6.

of leadership within the VBSO.[26] Defs.' Ex. 2, Schuster Aff. ¶ 29. Moreover, as previously discussed, the reorganization of the VBSO resulting in the Plaintiff's transfer occurred for legitimate reasons. The Plaintiff did not suffer a decrease in salary, benefits, or other conditions of employment, nor did she complain about a significant change in working conditions.

Finally, the Plaintiff alleges that because she was "relieved of all her extra outside assignments (CRISIS Intervention CIT), ordered to do clerical duties, increased surveillance was placed on [her]," and because "[she] had to meet with both Chiefs whenever there were concerns in her division," she was treated differently than similarly situated persons outside her the protected class. Pl.'s Am. Compl. ¶ 24. The clerical duties which the Plaintiff alleges she was required to perform consisted of signing off on inmate releases and documenting her attendance.[27] Pl.'s Ex. 7, Agnew Aff. ¶¶ 7-8; Pl.'s Ex. 8, Schnurbusch Aff. ¶ 12. The VBSO took these measures to ensure quality control and staff compliance within the ISR.

---

[26] See supra note 18.

[27] To corroborate her allegations, the Plaintiff offers Exhibits 7 and 8, which are unsigned affidavits from two fellow office workers in the VBSO. These unsigned affidavits are not statements of the office workers; rather, they are statements of the EEOC investigator, generated in hopes that the office workers would adopt them. Under Federal Rules of Evidence 802, these unsigned affidavits cannot be considered. See Roberts v. Wal-Mart Stores, Inc., No. 95-0059-H, 1997 WL 38138, at *4 (W.D. Va. Jan. 28, 1997).

Defs.' Ex. 2, Schuster Aff. ¶ 16. Moreover, the Plaintiff has not offered evidence that these measures were racially or sexually motivated.

Thus, none of the employees to which the Plaintiff compares herself demonstrate that the Defendants treated her any differently than members outside her class because none of these employees were engaged in the type of professional shortcomings attributed to the Plaintiff. For the reasons stated above, the Plaintiff fails to establish a prima facie case of discrimination based on disparate treatment.

### 2. Discrimination based on non-reappointment

The Plaintiff alleges that the Defendants discriminated against her when the Sheriff-Elect decided not to reappoint her. She alleges that her non-reappointment is a disciplinary measure amounting to a "termination." The Plaintiff must show the following elements to establish a prima facie case of racial and gender-based discrimination in the enforcement of employee disciplinary measures: "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] job and [her] job performance was satisfactory; (3) [she] was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." Bryant, 288 F.3d at 133.

It is undisputed that the Plaintiff is a member of a protected class, that she was qualified for the job, and that she was not reappointed; however, as discussed supra Part III.A.1., the Plaintiff fails to prove that she performed her job satisfactorily, and that the Defendants treated similarly situated employees outside her class more favorably.

The Plaintiff contends that because other Captains were retained under the Sheriff-Elect's tenure and she was not, the Defendants discriminated against her. She identifies all reappointed Captains as her comparators.

First, under Virginia law, upon election of a new Sheriff, prior appointees only continue employment if the new Sheriff appoints them. Va. Code §§ 15.2-408, 15.2-1603. Appointment decisions are within the sole discretion of the new Sheriff. Id. "The Sheriff-elect has discretion to appoint or not to appoint any individual he chooses [and] because of this discretion, the deputy has no expectation of continued employment." Jolliffe, 971 F. Supp. at 1042. Thus, the Sheriff-Elect was free to appoint or not to appoint the Plaintiff.

The Sheriff-Elect chose not to reappoint the Plaintiff based on "her performance, her lack of accountability and failure to accept responsibility, her peer's negative reviews, and her hostile and unreceptive demeanor toward[s] [him] and the VBSO in two interviews." Defs.' Ex. 1, Stolle Aff. ¶ 14. Every

high-ranking officer[28] was subjected to the same reappointment
process.[29] In the interview portion of the process, every officer
was asked two questions: what he/she saw as the greatest
challenge in the VBSO; and what improvements he/she would
recommend. Id. ¶ 8. The Plaintiff failed to answer these
questions and, instead, criticized the VBSO. Id. The Plaintiff
does not deny the interview process or the results of the peer
reviews. Nor does she deny her answers to the interview
questions. Instead, the Plaintiff alleges that she was not
reappointed because she allegedly voted for the Sheriff Elect's
opponent, John Bell. Pl.'s Mem. in Opp'n to Mot. for Summ. J.
¶ 8. The Plaintiff denies that she actively worked on John
Bell's campaign, but alleges that the rumors that she did
constituted one reason for not reappointing her. The Plaintiff
offers no evidence to support this claim. Moreover, this claim
does not relate to discrimination based on a protected class.

Next, the Plaintiff alleges that she was not reappointed
because she filed an EEOC charge, that the Sheriff-Elect was
aware of this EEOC charge and refused to investigate it, and
that he ultimately decided not to reappoint her because of it.
Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 9. The Sheriff-Elect

---

[28] The high-ranking officers included two Chief Deputies, six
Captains, and ten Lieutenants.

[29] See supra note 9.

refused to discuss the EEOC charge with the Plaintiff stating that it would have no bearing on his decision in the reappointment process. Defs.' Ex. 1, Stolle Aff. ¶¶ 10, 16. The Plaintiff does not dispute that the Sheriff-Elect refused to discuss the EEOC charge. Instead, the Plaintiff counters with allegations that his knowledge and refusal to investigate the EEOC charge was discriminatory in nature, and violated VBSO policy. Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶ 9.

None of the Plaintiff's arguments provide any support for her allegation that the Defendants treated similarly situated employees outside her class more favorably when she was not reappointed. All of the Captains were subjected to the same interviews, peer reviews, and resume reviews to which the Plaintiff was subjected. Moreover, the Defendants have provided legitimate non-discriminatory reasons for not reappointing the Plaintiff. None of her comparators possessed the professional shortcomings that resulted in her non-reappointment. Finally, the Plaintiff offers no evidence that her race or gender factored into the Sheriff-Elect's decision not to reappoint her. On the day that the Sheriff-Elect took office, he appointed two female Captains, and he appointed and promoted an African American female to Captain. Defs.' Mem. in Supp. of Summ. J. at 29; Defs.' Ex. 1, Stolle Aff. ¶ 17. For the reasons stated

27

above, the Plaintiff fails to establish a prima facie case of discrimination based on enforcement of disciplinary measures.

As such, the Plaintiff offers no proof, other than her personal beliefs, which the court may consider to prove that she was the victim of discrimination based on her race and gender. Her subjective beliefs, without more, do not create a genuine issue of material fact. Bryant, 288 F.3d at 135 ("unsupported speculation insufficient to defeat summary judgment") (citing Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995)).

### B. Hostile Work Environment Claim

The Plaintiff alleges that the Defendants "create[d] a hostile work environment of discrimination and retaliation against [her]." Pl.'s Am. Compl. ¶ 23. She specifically alleges that "their actions were malicious, demeaning, manipulative, disruptive, and they incited (peers, subordinates, and civilian staff) to participate in their discriminatory and retaliatory behavior." Id.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). "Since an employee's work environment is a term or

condition of employment, Title VII creates a hostile working environment cause of action." E.E.O.C. v. Central Wholesalers Inc., 573 F.3d 167, 174 (4th Cir. 2009) (quoting E.E.O.C. v. R & R Ventures, 244 F.3d 334, 338 (4th Cir. 2001)).

In order to establish a prima facie case of hostile work environment, a plaintiff must demonstrate that the alleged harassment was 1) unwelcome; 2) based on race or gender; 3) sufficiently pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) it was imputable on some factual basis to the employer. Id. at 175.

The severity of the conduct has both subjective and objective components. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-23 (1993)). First, the plaintiff must show that she subjectively perceived the environment to be abusive. Id. Next, the plaintiff must show that a reasonable person in her position would have perceived the environment to be abusive or hostile. Id. Therefore, the plaintiff must show that she did perceive, and that a reasonable person would perceive, the environment to be abusive or hostile. Id. The objective inquiry, however, is not a "mathematically precise test." Id. at 175 (quoting Harris, 510 U.S. at 22). Rather, the objective inquiry requires examining the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it interferes with an employee's work performance." Id. (quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)). "In order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" Sunbelt Rentals, Inc., 521 F.3d at 315 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)); see also Lissau v. Southern Food Service., Inc., 159 F.3d 177, 183 (4th Cir. 1998). Thus, the workplace must be "permeated with discriminatory intimidation, ridicule and insult . . . that is sufficiently severe or pervasive to alter conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (internal citations and quotations omitted). "Teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Lissau, 159 F.3d at 183 (quoting Faragher, 524 U.S. at 788.)

Whether the conduct is imputable to an employer depends on the status of the harasser. Vance v. Ball State University, 133 S.Ct. 2434, 2437 (June 24, 2013). When the harasser is a co-worker of the plaintiff, liability attaches to the employer if the employer was "negligent in controlling the working conditions." Id. If the harasser was the Plaintiff's supervisor, and the supervisor's harassment "culminates in a tangible

employment action (i.e., 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits'), the employer is strictly liable." Id. (quoting Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 761 (1998)). However, if the Plaintiff did not suffer a tangible employment action, the employer may establish an affirmative defense to protect it from liability by showing that "1) the employer exercised reasonable care to prevent and correct any harassing behavior, and 2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Id.

Here, the Plaintiff cannot establish a prima facie case of hostile work environment because she fails to allege any unwelcomed incidents, actions, or comments based on race or gender, or a severe or pervasive discriminatory environment. First, the Plaintiff alleges generally that the Defendants "creat[ed] a hostile work environment of discrimination and retaliation against [the Plaintiff]." Pl.'s Am. Compl. ¶ 23. However, she does not describe any specific incidents of "discriminatory intimidation, ridicule and insult." Harris, 510 U.S. at 23. The only specific incidents that the Plaintiff mentions concern her differences with her supervisor, Chief

31

Deputy Schuster. Pl.' Aff. ¶¶ 29; Pl.'s Am. Compl. ¶ 20. These complaints are "without a hint of racial [or gender] significance." Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000). For example, the Plaintiff alleges that "Lee's subordinates (lieutenants and sergeants) continually advised and complained that documents that were forwarded up the chain of command to Schuster were routinely missing, they were short staffed, and the sergeants complained that Schuster might be favoring a paramour with female deputies assigned to Lee's division, as well as male deputies (known as 'Schuster boys')" and that she "spoke with Schuster about these problems but they were never addressed or corrected."[30] Pl.'s Am. Compl. ¶ 20. Even if Chief Deputy Schuster "harbored some personal dislike of [the Plaintiff] that made [the Plaintiff's] job more difficult or stressful, '[a]n employer is not required to like his employees.'" Hawkins, 203 F.3d at 211 (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). Moreover, the Plaintiff complained to Sheriff Lanteigne only about her communication difficulties with Chief Deputy Schuster. See Pl.'s Ex. 5, p. 17. She never mentioned discrimination or retaliation to Sheriff Lanteigne. The Fourth Circuit has held that "[a]

---

[30] The Plaintiff also offers Exhibit 5, which is her personal account of various conversations she had with the Defendants; however, none of these conversations implicate any race or gender-based harassment.

story of workplace dispute . . . and some perhaps callous
behavior by superiors [do not] describe the type of severe or
pervasive gender, race, or age based activity necessary to state
a hostile work environment claim." Bass v. E.I. DuPont de
Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Thus, the
Plaintiff fails to allege any unwelcomed conduct specifically
directed at her because of her race or gender, and as such,
cannot prove a severe or pervasive discriminatory environment.

Next, even if the Plaintiff had sufficiently alleged a
hostile work environment claim, she cannot impute strict
liability to her employer, the VBSO, based on Chief Deputy
Schuster's conduct. As defined in Vance, Chief Deputy Schuster
was not the Plaintiff's supervisor for purposes of vicarious
liability under Title VII because he was not empowered to "take
tangible employment actions against the [Plaintiff]." 133 S. Ct.
at 2454. Moreover, under Virginia law, the authority to effect
hiring, firing, promotions, transfers, reassignments or changes
in benefits is placed firmly with the Sheriff. See Va. Code
§§ 15.2-408, 15.2-1603. Additionally, the Plaintiff cannot
impute liability to the VBSO based on her co-workers' conduct
because she has failed to show that the VBSO was "negligent in
controlling the working conditions." Vance, 133 S. Ct. at 2437.
The Plaintiff never complained of race or gender based
harassment to Sheriff Lantiegne during a meeting to address her

communication concerns with Chief Deputy Schuster. Moreover, the Plaintiff never filed an internal EEO complaint, as mandated by the VBSO EEO policy and procedure, alleging discrimination, retaliation, or harassment. As such, neither Sheriff Lanteigne nor the VBSO had actual or constructive notice of her concerns; thus, they were not negligent in controlling the Plaintiff's working conditions.

For the reasons stated above, the Plaintiff has failed to establish a prima facie case of hostile work environment.

### C. Retaliation Claim

The Plaintiff alleges that the Defendants retaliated against her 1) after she complained of discrimination; 2) after filing her first EEOC Charge; and 3) when the Sheriff-Elect decided not to reappoint her. Title VII § 704(a) prohibits an employer from taking an adverse employment action against an employee "because he has opposed any practice made an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-3(a). The Plaintiff seeks to proceed under the burden shifting framework for her retaliation claims.[31]

To establish a prima facie case of retaliation, the Plaintiff must show that 1) she engaged in a protected activity; 2) the employer acted adversely against her; and 3) there was a

---

[31] See supra note 16; see also E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 405 (4th Cir. 2005) (referencing the McDonnell Douglas burden-shifting elements).

causal connection between the protected activity and the asserted adverse action. Navy Federal Credit Union, 424 F.3d at 406. The Supreme Court recently imposed a heightened causation standard for retaliation claims, in contrast to the lesser "motivating factor" standard employed in discrimination claims. "Title VII retaliation claims must be proved according to the traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2533 (June 24, 2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id.

"[A] 'protected activity' may fall into two categories: opposition or participation." Navy Federal Credit Union, 424 F.3d at 406 (citing Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)); see also 42 U.S.C. § 2000e-3(a). "Activities that constitute participation are outlined in the statute: 1) making a charge; 2) testifying; 3) assisting; or 4) participating in any manner in an investigation, proceeding, or hearing under Title VII." Laughlin, 149 F.3d at 259; see also 42 U.S.C. § 2000e-3(a).

The Plaintiff did not engage in a protected activity when she allegedly complained of discrimination to Sheriff Lanteigne. First, she did not base her concern on race or gender

discrimination or harassment, nor did she file an internal EEO complaint alleging discrimination or retaliation, despite her knowledge of the internal policy for doing so. As such, the Defendants had no knowledge of these allegations. Second, the Plaintiff's informal verbal complaints only appear to address the communication issues she was having with Chief Deputy Schuster. Pl.'s Am. Compl. ¶ 27. It is undisputed that this complaint was addressed, and a solution to improve the communication between the Plaintiff and Chief Deputy Schuster was offered by Sheriff Lanteigne and Chief Deputy Schuster. Defs.' Ex. 2, Schuster Aff. ¶ 9; Defs.' Ex. 7. Moreover, even if Chief Deputy Schuster disliked the Plaintiff and, as a result, made her job more difficult or stressful, "[a]n employer is not required to like his employees." Williams, 871 F.2d at 457. "And no court sits to arbitrate mere differences of opinion between employees and their supervisors." Hawkins, 203 F.3d at 281.

The Plaintiff, however, did engage in a protected activity when she filed her first EEOC Charge on May 29, 2009, alleging discrimination based on race and gender, and retaliation. However, the Plaintiff fails to establish the requisite adverse action or the but-for-cause connection.

First, the Plaintiff cannot prove that she suffered an adverse employment action as a result of filing her first EEOC charge when she was laterally transferred. Defendant Sheriff

Lanteigne announced his reorganization of senior leadership on April 30, 2009, which was one month before the Plaintiff filed her first EEOC charge; thus, her transfer to the Civil Process Division could not have been in retaliation for filing the charge. "[O]ne cannot retaliate against an employee for engaging in protected activity until the employee actually engages in the protected activity." Smith v. Sec'y of the Army, No. 1:11-cv-724, 2012 WL 3866487, at *4 (E.D. Va. Sept. 5, 2012) (citing Am. Jur. Job Discrimination § 247) ("a lack of causation may be shown where the adverse action occurred before the claimant began to assert [her] rights, or before the employer learned of the protected activity.")). Moreover, as discussed supra Part III.A.1., the Plaintiff's lateral transfer is not an adverse employment action under Title VII. In Boone, the court held that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." 178 F.3d at 256-57. The Plaintiff's lateral transfer did not result in a decrease in salary, benefits, or other conditions of employment, including levels of responsibilities. Because the Plaintiff fails to prove an adverse employment action, she also fails to establish the requisite but-for cause connection, and

as such, fails to establish a prima facie case for retaliation based on her lateral transfer.

The Plaintiff also alleges that the Defendants retaliated against her after she filed her first EEOC charge when the Sheriff-Elect decided not to reappoint her. The Plaintiff alleges this in her second EEOC charge, filed July 7, 2010.

The decision to appoint or not to appoint deputies lies within the sole discretion of the Sheriff-Elect. See supra Part III.A.2. Moreover, it is undisputed that the Sheriff-Elect did not read, nor did he discuss with the Plaintiff, the first EEOC charge. The Fourth Circuit has stated that "[m]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee." Williams, 871 F.2d at 457. Even if the Plaintiff could prove that her non-reappointment constituted an adverse employment action, the Defendants have provided legitimate non-retaliatory reasons for the Plaintiff's non-reappointment, including her documented performance shortcomings,[32] her peers' negative reviews, and her hostile and unreceptive demeanor in two interviews. Consequently, the Plaintiff cannot establish the adverse

---

[32] See supra note 22.

employment action and the causal connection necessary to establish a prima facie case of retaliation based on her non-reappointment.

For the reasons state above, the Plaintiff fails to prove a prima facie case of retaliation.

### D. The Plaintiff's Official Capacity Claims

The Plaintiff is suing the Defendants in their individual and official capacities.[33] As part of her relief, the Plaintiff seeks to recover compensatory damages, punitive damages, front pay, and back pay with interest, and the Plaintiff's requested injunctive relief is in the form of 1) reinstatement; 2) a ban on future retaliatory action for those employed at the VBSO; and 3) a ban on future retaliation and violation of the Plaintiff's civil rights. Pl.'s Am. Compl. 15-16.

"In Virginia, a suit against a sheriff and his deputies in their official capacities and suits against a sheriff's office are suits against the state." Savage v. County of Stafford, Va., No. 1:09-CV-1328, 2010 WL 1873222, at *3 (E.D. Va. May 4, 2010). Ken Stolle, as the Sheriff of Virginia Beach, is a constitutional officer, see Va. Const. art. VII § 4; Bland v.

---

[33] The Plaintiff's official capacity claims against the former Sheriff Paul Lanteigne and former Chief Deputy Free are DISMISSED because both of these Defendants do not have an official capacity in which they can be sued. The officers' successor is automatically substituted pursuant to FRCP Procedure 25(d). In this case, the successor is the Defendant, Sheriff Ken Stolle.

Roberts, 730 F.3d 368, 390 (4th Cir. 2013) (citing Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990)), and an arm of the state. Bland, 730 F.3d at 390 (citing Blankenship v. Warren County, Va., 918 F. Supp. 970, 973-74 (W.D. Va. 1996)). Claims against the Sheriff are paid from a trust funded by the state treasury. Bland, 730 F.3d at 390. "[I]n enacting Title VII, Congress properly abrogated the states' Eleventh Amendment immunity for such suits." Stewart, Jr. v. Virginia Commonwealth Univ., 414 Fed. Appx. 555, 556 (4th Cir. 2011). Moreover, under Title VII, a Sheriff in his or her official capacity or the Sheriff's Office is an employer and, thus, subject to suit. Briggs v. Waters, 455 F. Supp. 2d 508, 513-14 (E.D. Va. 2006).

The Eleventh Amendment immunity does not preclude the plaintiff from seeking compensatory damages against the Sheriff and the Sheriff's Office under Title VII. Blankenship v. Warren County, Va., 931 F. Supp. 447, 450-51 (W.D. Va. 1996); see also 42 U.S.C. § 1981a. Prior to 1991, Title VII remedies were limited to back pay and equitable relief. Lissau, 159 F.3d at 181. However, "[i]n 1991, Congress added compensatory and punitive damages to the list of available remedies . . . to deter unlawful harassment and intentional discrimination in the workplace." Id. Moreover, "[T]itle VII 'vests broad equitable discretion in the federal courts to order such affirmative action as may be appropriate to remedy a violation including

40

back pay and such other equitable relief as the court deems appropriate.'" Briggs, 455 F. Supp. 2d at 515 (quoting Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 356 (4th Cir. 1994)). However, where the plaintiff seeks punitive damages from a governmental entity, 42 U.S.C. § 1981a(b)(1) is a statutory bar against recovery from the governmental entity itself and the individual defendants in their official capacities. Bryant v. Locklear, 947 F. Supp. 915, 916 (E.D.N.C. 1996).

Likewise, the Eleventh Amendment immunity does not bar the Plaintiff's official capacity claims for injunctive relief under Title VII. "[W]here the Plaintiff has prevailed and established the defendant's liability under Title VII, there is no discretion to deny injunctive relief completely." United States v. Gregory, 871 F.2d 1239, 1246 (4th Cir. 1989); see also King v. McMillan, 594 F.3d 301, 311 (4th Cir. 2010).

In the instant action, the court must first determine whether there is a genuine issue of material fact as to whether the Sheriff and the VBSO discriminated and retaliated against the Plaintiff because of her race and gender, and created a hostile working environment in violation of Title VII, such that the Plaintiff is entitled to compensatory damages, front pay, back pay with interest, reinstatement and to an injunction ending such ongoing discrimination and retaliation and/or enjoining future violations.

Because the Plaintiff has failed to show a prima facie case of discrimination, retaliation, and hostile work environment under Title VII, the Plaintiff cannot recover on her official capacity claims.

### E. The Plaintiff's Individual Capacity Claims

The enforcement provision of Title VII permits actions by a claimant only against an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 2000e-5(b). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees" 42 U.S.C. § 2000e. Supervisors do not fit within the definition of an "employer," and as such cannot be held liable in their individual capacities under Title VII. Lissau, 159 F.3d at 180-81. The Sheriff in his individual capacity is not an employer within the meaning of Title VII. Briggs, 455 F. Supp. 2d at 508; see also Blankenship v. Warren County, Va., 931 F. Supp. at 449 (ruling that a Sheriff "cannot be held liable in his individual capacity under Title VII"). Thus, because Sheriff Lanteigne, Sheriff-Elect Ken Stolle, Chief Deputy Schuster, Chief Deputy Free, Captain Ortiz and Helen Quick are not "employers" pursuant to Title VII, they are not liable in their individual capacities.[34] The VBSO is the only proper party to the

---

[34] Because the unserved Defendants, Paul Lanteigne and Dennis Free could not be liable for the Plaintiff's claims, they would

Plaintiff's Title VII claims. Therefore, the Plaintiff cannot recover on her individual capacity claims under Title VII.

### F. The Plaintiff's Claims under VHRA

The Plaintiff alleges discrimination and retaliation under the VHRA. In order for the Plaintiff to establish a private cause of action pursuant to the VHRA, the Plaintiff must meet the conditions of VHRA § 2.2-3903 (B) and (C). Pursuant to VHRA § 2.2-3903 (B) and (C), a plaintiff may bring an employment discrimination action against a defendant with at least five, but fewer than fifteen employees. In <u>Blankenship v. City of Portsmouth</u>, 372 F. Supp. 2d 496, 501 (E.D. Va. 2005), this court held that the Plaintiff did not have a claim against the City of Portsmouth's Sheriff's Department and the Sheriff under the VHRA because the Defendants had hundreds of employees. In this case, the Plaintiff does not dispute that in the fiscal year 2009, the VBSO employed 540 persons. Defs.' Mot. for Summ. J. at 16; Defs.' Ex. 1, Stolle Aff. ¶ 4. As such, the Plaintiff does not have a viable claim under VHRA.

---

properly be dismissed from this action. Therefore, the court **DISMISSES** the Plaintiff's claims against Dennis Free and Paul Lanteigne pursuant to 28 U.S.C. § 1915 (e)(2)(ii) for failure to state a claim upon which relief could be granted. This dismissal is without prejudice to the Plaintiff's right to file a paid complaint against Dennis Free and Paul Lanteigne.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment is **GRANTED**; the claims against Defendants Lanteigne and Free are **DISMISSED** without prejudice.[35] The Plaintiff is **ADVISED** that she may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty (30) days from the entry date of this Opinion and Final Order. The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to the Plaintiff and to counsel for the Defendants.


IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

April 14, 2014

---

[35] See supra notes 1, 33, and 34, and accompanying text.